ASBESTOS FIBRES, INCORPORATED, A NEW JERSEY
CORPORATION, PLAINTIFF-APPELLANT, v. MARTIN
LABORATORIES, INC., A NEW JERSEY CORPORA-
TION, DEFENDANT-RESPONDENT.

Argued March 23, 1953—Decided April 27, 1953.

*Mr. Samuel H. Nelson* argued the cause for the appellant (*Mr. Michael Breitkopf*, attorney).

*Mr. Jerome C. Eisenberg* argued the cause for the respondent (*Messrs. Eisenberg & Spicer*, attorneys).

The opinion of the court was delivered by

BURLING, J. This is an appeal in a civil action instituted in the Superior Court, Law Division, wherein the plaintiff, Asbestos Fibres, Incorporated, a New Jersey corporation, sought reformation of a lease and damages for unlawful eviction from the demised premises. The defendant Martin Laboratories, Inc., a New Jersey corporation, filed a counter-

claim. The trial resulted in judgment of dismissal as to the plaintiff's complaint, of damages of $4,830.82 in favor of the defendant and against the plaintiff on the first count of its counterclaim, and against the defendant on the second count of its counterclaim. The plaintiff appealed to the Superior Court, Appellate Division. Prior to hearing there, certification was allowed upon our own motion.

The plaintiff initiated this action by filing a complaint in the Superior Court, Law Division, on January 5, 1951 alleging therein that on December 18, 1947 it had entered into a five-year lease with the defendant for premises owned by the defendant in the City of Newark, Essex County, New Jersey; that the defendant failed to carry out the terms of the lease and as a result the City of Newark ordered the closing of the building, forcing plaintiff to move to other quarters on September 1, 1949; and that the plaintiff as a result thereof suffered injury in several detailed respects. The plaintiff sought damages from the defendant in the amount of $250,000. The defendant answered denying that it had breached the lease or caused plaintiff's removal from the premises, and by counterclaim sought damages of $3,625 (on the first count) for nonpayment of monthly installments of rent due, and $2,500 (on the second count) for plaintiff's failure to comply with terms of the lease calling upon the lessee to make repairs. This analysis of the action was substantially set forth in a pretrial order entered December 18, 1951, as amended at the first trial in the cause.

The provision of the lease upon which the plaintiff had premised its action read as follows:

"36–A: It is agreed between the parties hereto that sewerage and water are available in the building and are in usable condition up to the building."

During the course of the first trial, the trial court construed paragraph 36-A of the lease, *supra*, "to be not a covenant on the part of the landlord that sewerage and water are available in the building and are in usable condition up to the building and will be so maintained and kept by the

landlord during the term of the lease," nor a warranty on the part of the landlord. After an extended colloquy between the trial court and counsel, during which the trial court advised counsel that "equity will, upon a proper showing, reform the policy or contract" upon grounds such as mutual mistake, and the plaintiff admitted that its claim was based upon mistake in the wording of paragraph 36-A of the lease, the plaintiff moved to amend the complaint to include a prayer for reformation of paragraph 36-A. The defendant resisted the motion.

During the course of argument on the motion, the defendant admitted that if an equitable count for reformation were permitted and succeeded its counterclaim would be "almost completely eliminated."

After extended discussion the trial court granted the motion, conditioned upon plaintiff paying to the defendant costs in the amount of $100. Upon plaintiff's acceptance of this condition the trial court ordered the withdrawal of a juror and declared a mistrial.

Subsequently, the plaintiff filed an amended complaint and the defendant filed an amended answer and counterclaim. The issues raised thereby were in essence the same basic issues raised in the original pleadings and pretrial order, with the inclusion of pleadings relating to reformation. At the second trial, which began on October 16, 1952, an amended pretrial order stating these issues was filed on October 17, 1952. This amended pretrial order contained the following statement:

"It is agreed by consent of counsel that the pretrial order entered herein on December 18, 1951 be amended to show that the only remaining issue in the case is raised by the second count of the amended complaint filed herein on May 20, 1952, namely, whether a mutual mistake of fact was made to justify reformation of paragraph 36 A of the lease attached to the complaint. The plaintiff contends that a mutual mistake of fact was made. This is denied by the defendant."

During the course of the trial the defendant's evidence as to the amounts alleged to be due as rent under the lease was

introduced by stipulation. Testimony and other evidence was introduced by both parties on the other issues, namely reformation, eviction and incidental damage to the property.

After both parties had rested, the defendant moved for judgment in its favor on the issue of reformation "without submitting the case to the jury." The defendant grounded the motion on the plaintiff's alleged failure to introduce sufficient evidence to "justify submitting this case to the jury on the issue of reformation." The trial court granted the motion, stating:

"I am completely satisfied from the proof there is no evidence to establish a mutual mistake of fact and *thereby* submit the case to the jury. * * *" (Emphasis supplied).

The defendant then moved for judgment for rent due. This motion was also granted.

The trial court thereupon instructed the jury that the sole remaining issue was defendant's counterclaim for damages to the property. On this issue the jury returned a verdict of no cause of action.

Judgment was entered on October 22, 1952, dismissing the plaintiff's complaint. The judgment also ran in favor of the defendant in the amount of $4,830.82 on the rent count of the counterclaim, and against the defendant on the incidental damage count. The plaintiff appealed from so much of the judgment entered as went in favor of the defendant, as hereinbefore noted.

The questions involved on this appeal are whether the plaintiff is entitled, on the evidence, to reformation of paragraph 36-A of the subject lease, and whether defendant's failure to perform its duty (under paragraph 36-A in the event of reformation in accordance with plaintiff's claim for reformation) constituted a constructive eviction of the plaintiff entitling plaintiff to damages and defeating defendant's counterclaim for rent. This latter question is not reached in the disposition of this appeal.

### ADJECTIVE.

The plaintiff argues on this appeal as an incident of its assertion that the trial court erred in entering judgment for the defendant on the issue of reformation, that there was sufficient evidence introduced to require the issue to go to the jury. Plaintiff asserts that the court was "committed to submit factual issues to the jury, on the theory that the parties had requested it, at least impliedly" under *Rule* 3 :39–1.

There is no merit in this argument. It is settled in New Jersey that reformation of a contract is an issue peculiarly and solely of equitable cognizance. *Italian-American B. & L. Ass'n. v. Russo*, 132 *N. J. Eq.* 319, 324 (*E. & A.* 1943); *Canter v. Seiden*, 128 *N. J. L.* 156, 158 (*Sup. Ct.* 1942); *Carter v. Mishell*, 4 *N. J. Super.* 310, 314 (*App. Div.* 1949). *Cf. Ross v. Orr*, 3 *N. J.* 277, 282 (1949).

*Art.* VI, *Sec.* III, *pars.* 2, 3 and 4, and *Art.* XI, *Sec.* IV, *par.* 3 of *N. J. Const.* 1947 have merged law and equity jurisdiction in the Superior Court, *Mayor, &c., of Alpine Borough v. Brewster*, 7 *N. J.* 42, 51 (1951), and an aim of the Judicial Article of the 1947 charter and of the rules of this court was to facilitate and expedite the hearing of causes by disposing of all matters, whether legal or equitable, arising in a controversy in one trial and thus avoid multiple trials of the same case. *Massari v. Einsiedler*, 6 *N. J.* 303, 307, 308 (1951). We have held that reformation, an affirmative equitable remedy, to be availed of, must be asserted in a law action where germane or cognate as a defense to an affirmative claim of a party in that law action. *Massari v. Einsiedler, supra* (6 *N. J.*, at *pp.* 312–313). *Rule* 3 :12–2.

These verities in our present practice do not, however, give new absolute rights to trial by jury, nor do they justify deviation from the rules. It is settled that:

"* * * By *Rule* 3 :39–2 all issues of fact not triable of right by a jury shall be decided by the court without a jury, subject to the provisions of *Rule* 3 :39–1. This rule, 3 :39–1, insofar as it con-

cerns us here, provides merely that the court *may* try with an advisory jury any issue of fact not triable of right by a jury." *Steiner v. Stein*, 2 *N. J.* 367, 380 (1949).

■ And it is likewise settled that under *N. J. Const.* 1947, *Art.* VI, *Sec.* III, *par.* 4, *supra*, and the rules, the trial court, *i. e.*, either the Law Division or the Chancery Division in the Superior Court, shall fully dispose of all equitable issues (or other issues not triable as of right by a jury) before or during the trial, leaving only purely legal issues for determination by the jury, *O'Neill v. Vreeland*, 6 *N. J.* 158, 166–168 (1951), unless *Rule* 3 :39–1 is invoked.

■ In the present case the record is clear that *Rule* 3 :39–1 was not invoked by the trial court, either on its own initiative or by order entered on consent of the parties. *Per contra*, the record demonstrates that the trial court, at both the first and second trials, recognized the reformation count as a purely equitable issue. At the second trial the court unmistakably exercised equity jurisdiction to determine the reformation issue and ruled that "thereby" (*i. e.*, as a result of that determination) it could not submit the case to the jury (for determination of damages, as claimed by the plaintiff, or for determination as to constructive eviction, asserted by the plaintiff in defense to the defendant's counterclaim for rent). The record exhibits no procedural defect in this respect.

## MERITS.

The principal substantive question involved is whether the plaintiff proved its equitable claim for reformation of parapraph 36-A of the lease between the plaintiff and the defendant. We determine that the trial court's judgment in this respect was valid.

■ ■ It is settled that reformation may be granted upon the ground of mutual mistake (the only ground upon which the plaintiff premised its claim for equitable relief in this case) only where a mutual mistake is shown by a "high order of proof." *Heuer v. Rubin*, 1 *N. J.* 251, 255 (1949). Such

proof must be "clear, cogent and convincing" or "clear and conclusive." *Ehnes v. Monroe Loan Society*, 120 *N. J. Eq.* 599, 602 (*E. & A.* 1936). *Cf. Toth v. Vasquez*, 8 *N. J. Super.* 289, 293 (*App. Div.* 1950), certif. den. 7 *N. J.* 76 (1951). The evidence introduced in this case falls far short of the prerequisite quality of proof of certainty of mutual mistake required by the foregoing authorities.

Mr. Kempthorne, president of the plaintiff, testified that he had personally attended to negotiations with the defendant, which was represented by a Mr. Martin (who subsequently testified for the defendant), and that Martin told him "he would maintain the sewerage, that it was in condition up to the edge of the building." Kempthorne further testified that at the time of the meeting between them at which the lease was signed, Martin drew up clause 36-A, said that it protected the plaintiff (as to plumbing being in usable condition up to the edge of the building) and that Kempthorne "agreed that it did protect me in what I wanted." Kempthorne also testified as to conditions subsequent to plaintiff's entry into possession, namely that the main sewer would not work and the backflow therefrom caused unsanitary conditions in the plant, which Martin agreed to remedy. He testified further that the plant was shut down "by the State and by the City of Newark because of the unsanitary conditions."

Mr. Martin, who was president of the defendant at the time the lease was entered into and attended to negotiations thereon, testified that during the preliminary negotiations he had advised Kempthorne that extensive repairs to windows, roof, and sewerage facilities (both internal fixtures and the external sewer line) would be required and would have to be made by the lessee, and that Kempthorne agreed. He testified that when they met to sign the lease the rider adding paragraph 36-A was presented to him, the representative of the real estate firm (Mr. Lowy) advising him that it was "one little thing" Kempthorne wanted. Martin testified that after discussion Kempthorne and Lowy convinced him he should consult an attorney and that he thereupon tele-

phoned his attorney in the presence of both Lowy and Kempthorne and then told them that his attorney "told me that this paragraph has no meaning and it should not be there at all." Martin testified that Mr. Kempthorne thereupon said:

"Look, I have studied law, I know what it is all about. I know it hasn't got any meaning but I would like to have it in there. It doesn't hurt you in any way to have it in there."

Thereupon Martin signed the lease.

The lease includes the following provisions in addition to Paragraph 36-A *supra*:

"36th. The tenant has inspected the said demised premises and accepts the same 'as is' without any obligation on the part of the landlord to supply any services whatsoever.
2nd. That the Tenant shall * * * at the Tenant's own cost and expense make all repairs and replacements of whatsoever kind and nature, both inside and outside. * * *
3rd. That the Tenant shall promptly execute and comply with all statutes, ordinances, rules, orders, regulations and requirements of the Federal, State, Municipal and City Government and of any and all their Departments and Bureaus applicable to said premises, for the correction, prevention, and abatement of nuisances or other grievances, in, upon, or connected with said premises during said term;
20th. The failure of the Landlord to insist upon a strict performance of any of the terms, conditions and covenants herein, shall not be deemed a waiver of any rights or remedies that the Landlord may have, and shall not be deemed a waiver of any subsequent breach or default in the terms, conditions and covenants herein contained. This instrument may not be changed, modified or discharged orally."

Paragraph 6th contained language repetitious of the above quoted portion of paragraph 2nd. Paragraphs 34th and 41st specified that repairs to windows and doors were to be made immediately at the tenant's expense, a portion thereof to be reimbursed by the landlord by deductions from monthly rental payments, and paragraph 25th contained similar provisions applicable to other repairs.

The detail of the provisions above quoted or adverted to appears to corroborate Mr. Martin's testimony. Further,

Mr. Lowy testified that paragraph 36-A was typed in his office but he could not remember who wrote it up. He testified that he could not recall who suggested the language of paragraph 36-A, but that after it had been written Mr. Martin made a telephone call to his attorney in New York and said that the paragraph was all right as long as his attorney had passed it and it didn't make any difference. Mr. Lowy further testified "I don't know," when asked whether Kempthorne made any reply to Martin's statement in reference to his attorney's advice. Mr. Kempthorne, while expressly denying some of the conversations testified to by Mr. Martin, admitted that he had studied "business law" and testified he did not remember any statement to the effect that it couldn't hurt if both agreed that water and sewerage were present. He also testified that Martin said he called his lawyer's office and read paragraph 36-A over the phone, but Kempthorne couldn't remember whether the call was made in his presence.

Further, it appears that although the State Department of Labor and the City Department of Health had instituted steps to require correction of sewage disposal facilities in May 1948, the facilities passed inspection twice  There is evidence in the record which shows that the plant was ordered closed (by the State) on August 17, 1949 for failure of the plaintiff to eliminate certain conditions (none of which related to sewers), and the City Department of Health on August 16, 1949 had also caused a summons to issue against plaintiff in connection with the maintenance of conditions at the plant which constituted a nuisance, namely atmospheric concentration of dust particles exposing workers to asbestosis. There is evidence in the record indicating that the sewer was in working condition in August 1948. Other summonses caused to be issued against the plaintiff by the City Department of Health on August 16, 1949, did not refer to the sewer system but to the condition, serviceability and sufficiency of toilet and washing facilities for workers. While these elements are not directly relevant to the issue of reformation, they tend adversely to affect Mr. Kempthorne's

credibility. Upon the whole evidence in the case it is doubtful whether these latter conditions were attributable to any defect in the exterior sewer system.

We reiterate our conclusion that the entire record supports the determination of the trial court, namely that the evidence does not clearly and convincingly demonstrate a mutual mistake entitling the plaintiff to reformation of paragraph 36-A of the lease in question.

The plaintiff further contends that even if there is proved only a unilateral mistake it is entitled to reformation where the defendant's conduct in respect thereto has been inequitable. No such basis for relief was laid in the pleadings or pretrial orders, *cf. Ehnes v. Monroe Loan Society, supra,* but if it were sufficiently pleaded the burden of proving the same is of comparable "high order," calling for clear and convincing evidence. Under the circumstances of this case, any mistake on the part of the plaintiff would seem to have been wholly caused by the plaintiff's want of that care and diligence which should be used by every person of reasonable prudence. Upon this posture of the evidence equity will not interpose its relief of reformation. *Riggle v. Skill,* 9 *N. J. Super.* 372, 379 (*Ch. Div.* 1950), affirmed for the reasons expressed in the opinion of Judge Haneman in the Superior Court, 7 *N. J.* 268 (1951).

The final question involved is, in the plaintiff's words, whether "Defendant's breach of the duty imposed by the 'true' provision relieved plaintiff from liability on the lease," and thus entitled plaintiff to damages for unlawful eviction and defeated defendant's counterclaim for rent. This question in this case is clearly conditioned upon a determination calling for reformation of paragraph 36-A of the lease in question. Reformation having been properly denied, it is unnecessary under the circumstances of this case to determine whether a constructive eviction occurred, since the plaintiff's assertion of eviction as a basis for damages and as a defense to the defendant's counterclaim for rent, on this appeal, is based solely upon the agreement as the plaintiff contended it should have been reformed.

## CONCLUSION.

For the reasons expressed in this opinion the judgment of the Superior Court, Law Division, is hereby affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN —6.

*For reversal*—Justice HEHER—1.