39 N.J. Super. 336 (1956)
121 A.2d 32
JOHN ROACH, JR., INC., PLAINTIFF-RESPONDENT,
v.
WILLIAM A. PINGPANK, TRADING AS W.A. PINGPANK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 20, 1956.
Decided March 6, 1956.
*337 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Samuel C. Meyerson argued the cause for the respondent.
Mr. Charles M. Egan, Jr., argued the cause for the appellant.
*338 The opinion of the court was delivered by FRANCIS, J.A.D.
Plaintiff, John Roach, Jr., Inc., an insurance agent, recovered a judgment in the county district court against defendant Pingpank, a broker. It represented an additional unpaid premium due on a workmen's compensation insurance policy negotiated by Pingpank as broker on behalf of the insured, one Marjorie Ackland, trading as River Tavern. Pingpank appeals, contending that in having the policy written through Roach he was simply acting as agent for a fully disclosed principal, Marjorie Ackland, and consequently assumed no personal liability for the premium.
The record discloses that Roach conducts a general insurance agency in Dover, New Jersey. Defendant, who lives in Mountain Lakes, New Jersey, is a licensed broker and writes insurance in Morris County. According to the trial court's statement, defendant communicated with John Roach, Jr., plaintiff's president, and inquired as to whether the insurance company for which Roach was agent would write policies "for him." If so, Pingpank would furnish the names and addresses of his clients, the persons to be insured. Plaintiff agreed to do so.
Thereafter over a period of time, apparently some years, the parties did business together. The practice followed was for defendant to provide the necessary information as to the type of coverage required and the names and addresses of the persons to be insured. Plaintiff would issue the policies or, as agent for the insurance carrier, cause them to be written, and deliver them to defendant. Roach had no contact of any kind with Pingpank's clients. The charges for premiums were billed to defendant and sent to him with the policies. In turn, he would deliver the policies, collect the moneys due and deposit them in his own bank account. Then, after deducting his broker's commission, he would send his personal check for the balance of the premium.
Except for the words "for him" emphasized in the context above, there was no proof of any express agreement by defendant that he was to incur a personal obligation for the payment of premiums for his clients, or that credit therefor *339 was to be extended to him. The trial court found that the relation of debtor and creditor existed between them and so imposed liability on Pingpank.
Ordinarily an insurance broker is one who acts as a middleman between the insured and insurer. He has no special employment from the company but solicits business from the public generally and when obtained, offers it on behalf of his client, either directly to the carrier or to one of its agents. N.J.S.A. 17:22-6.2; 16 Appleman, Insurance Law and Practice (1944), § 8727; 29 Am. Jur., Insurance, § 86 (1940).
When coverage is supplied, the insured is primarily liable to the insurer for the premium. 3 Couch, Cyclopedia of Insurance Law (1929), § 607, at p. 1966. And normally a broker procuring a policy in behalf of a fully disclosed principal assumes no responsibility therefor. McCauley v. Ridgewood Trust Co., 81 N.J.L. 86, 88 (Sup. Ct. 1911); Restatement, Agency, § 320, comment (a) (1933); 3 C.J.S., Agency, § 215a (1936); 2 Am. Jur., Agency, § 315 (1936). However, he may pledge his own credit for payment by an express undertaking (Drill Construction Co. v. Rosenthal, 8 N.J. Misc. 666 (Sup. Ct. 1930); Sadler v. Young, 78 N.J.L. 594 (E. & A. 1910); 3 C.J.S., Agency, § 215b c, p. 122 (1936); Restatement, supra, § 146), or by a course of dealings which demonstrates an intention to do so, Munro v. Bowers, 293 Mass. 514, 200 N.E. 393 (Sup. Jud. Ct. 1936); 3 Couch, op. cit., supra, § 607, at 1967.
The presumption is that an agent acting in the course of a disclosed agency procures the extension of credit to his principal exclusively, and the burden of establishing the contrary rests upon the person asserting it. Weimer v. Bockel, 128 Pa. Super. 385, 194 A. 318 (Sup. Ct. 1937). In that case the Pennsylvania Superior Court also said:
"This initial burden is satisfied if the plaintiff proves that the defendant has made a promise, the form of which does not indicate that it was given as agent. The defendant then has the burden of going forward if he wishes to show that his promise was made only as an agent and that this should have been so understood."
*340 It may be conceded in the present situation that plaintiff's testimony was susceptible of the inference that credit was extended to the defendant. In defense, Pingpank denied that he had involved himself personally, or agreed or intended to do so, although he did not assert that any specific discussion of the matter was engaged in. But he endeavored to prove the existence of a custom or practice in the insurance trade with respect to the extension of credit as between agent and broker. An objection of plaintiff to this line of inquiry was sustained by the court and a claim of error is predicated thereon.
As already noted, the proofs did not establish an express undertaking by the defendant to be responsible for premiums. The inferences to be drawn from the words "for him" and from the course of dealings between the parties were for the court in the final analysis. But certainly a custom or practice by which persons in the business tacitly regulated their relations with each other is vital and relevant to a determination of their respective obligations. Johnson v. Hoffman, 7 N.J. 123, 133 (1951); Flaster v. Lincoln Tidewater Terminals, 124 N.J.L. 69, 71 (E. & A. 1940); Knight v. Hamilton, 313 Ky. 858, 233 S.W.2d 969, 26 A.L.R.2d 212 (Ct. App. 1950); Burch v. Prudential Ins. Co., 184 Md. 664, 42 A.2d 671, 163 A.L.R. 1466 (Ct. App. 1945); 55 Am. Jur., Usages and Customs, §§ 35, 41 (1946).
The ultimate decision as to whether the relation between these parties was that of creditor and debtor or creditor and agent for a disclosed principal, is a compound of law and fact. On the state of the proofs, the evidence proffered was germane to the problem, and prejudice resulted from its exclusion.
Since the premium debt is usually due to the insurance company, we assume that on the retrial an inquiry will be made into the right or authority of the plaintiff to maintain the action. Compare Munro v. Bowers, supra, where the course of dealings showed that the agent paid the premium to the company and was reimbursed by the broker. And see, 14 Appleman, op. cit., supra, § 8013(a) (1944).
Reversed.