237 N.J. Super. 195 (1989)
567 A.2d 259
BIBI WEINISCH, A/K/A BOB WAYNE, PLAINTIFF-APPELLANT,
v.
THOMAS E. SAWYER AND ALLSTATE INSURANCE CO., INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 1, 1989.
Decided December 6, 1989.
*196 Before Judges KING, SHEBELL and BAIME.
Christopher J. Hanlon argued the cause for appellant (Gross & Hanlon, attorneys; Christopher J. Hanlon and Gary S. Bernstein, on the brief).
Robin Horn argued the cause for respondents (Saiber, Schlesinger, Satz & Goldstein, attorneys; James H. Aibel, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
We are called upon to review the propriety of a Law Division ruling, in a damage action requesting reformation of an insurance contract, that plaintiff was not entitled to a jury trial on any issue other than punitive damages. In his complaint, plaintiff Bibi Weinisch alleged that defendants Allstate Insurance Co., Inc. (Allstate) and its agent Thomas E. Sawyer (Sawyer) breached their duty to him by failing to advise him of the availability of higher underinsured motorist (UIM) coverage under his insurance contract. Plaintiff sought to reform the contract and also compensatory and punitive damages. The action against Allstate and its agent Sawyer alleged negligence, *197 breach of contract and breach of statutory duty. Defendants' answer denied the allegations and asserted that plaintiff had no right to a trial by jury.
Both parties filed motions for summary judgment and for in limine determinations. Defendant sought to strike plaintiff's jury demand on the one hand, and plaintiff attempted to limit defendants' introduction of plaintiff's failure to read informational material on the other. The motions for summary judgment were denied. The court struck plaintiff's request for a jury trial, except as to punitive damages. All other requests for in limine relief were denied. We denied plaintiff's motion for leave to appeal. A bench trial was held, after which the judge rendered an oral decision dismissing plaintiff's complaint. Plaintiff now appeals.
On May 25, 1984, plaintiff sustained injuries when his car was struck from the rear in Marlboro Township, New Jersey. Plaintiff filed suit against the negligent driver and settled with her insurance company for the policy limits of $100,000.
At the time of the accident, plaintiff had automobile liability coverage of $250,000/$500,000, with a $1,000,000 liability umbrella, but uninsured/underinsured motorist coverage (UM/UIM) of only $15,000/$30,000. Plaintiff alleged that defendants failed to advise him of the availability of optional UIM coverage of $250,000/$500,000 and that such failure was breach of a duty owed to him by defendants.
Plaintiff first purchased automobile insurance from Allstate in 1966, when New Jersey statutes and insurance regulations did not require carriers to offer uninsured or underinsured motorist coverage. See N.J.S.A. 17:28-1.1. In 1969, plaintiff instructed Sawyer to increase his bodily injury liability coverage to the highest available amount, $250,000/$500,000. From 1966 to 1983, plaintiff's policy was automatically renewed on a yearly basis. During that period, New Jersey law changed to require that every automobile liability policy issued or renewed in New Jersey contain a minimum statutory limit of uninsured *198 motorist coverage, and in 1973 that coverage was included in all Allstate automobile policies. Underinsured motorist coverage became available to Allstate customers in 1980 when Allstate became a subscriber to the Insurance Services Office.
The primary factual dispute between the parties involved conflicting versions of what transpired in May 1984, after plaintiff had received a packet of documents sent to him by Allstate. Plaintiff asserted that he had contacted Sawyer by phone concerning the information in the documents and was told that if he did not want to reduce his coverages or lower his premiums, he could ignore the documents. Sawyer, he maintained, advised him to throw away the form and not worry about it, that Sawyer would take care of it. Plaintiff claimed he threw away the package of Allstate documents based upon Sawyer's advice.
Plaintiff made this call to Sawyer from his home in the presence of his wife. She testified that she witnessed her husband's phone call to Sawyer in May 1984. She knew plaintiff had phoned Sawyer to talk about the documents he had received in the mail. Plaintiff claimed he did not read the brochures provided by Allstate because he felt that he was paying high premiums for a lot of insurance coverage and felt that his agent would take care of his needs if there was any additional coverage that he needed.
Sawyer had no recollection of the May 1984 conversation with plaintiff. He testified that his usual and ordinary business practice at that time, when he was receiving 25-30 calls a day about the Allstate information packets, was that when a policyholder telephoned him he would answer any specific questions. When callers indicated that they did not understand a form, Sawyer would go over the entire form and explain the coverages or changes one by one. Sawyer asserted that had he received a call from plaintiff about the materials, he never would have advised him that the forms did not need to be filled out and returned, as Sawyer was aware that the documents *199 informed insureds that they could buy increased limits of coverage, including bodily injury, liability and UIM coverage, as well as a variety of personal injury protection options.
Sawyer further stated that if a policyholder had uninsured or underinsured motorist limits that were less than the policyholder's liability coverage, he would recommend an increase to that level. Sawyer stated that had plaintiff called him he would have advised plaintiff to purchase higher limits: "I am certain he would have purchased it, had he called me and asked me about it." Plaintiff testified that he did not specifically ask Sawyer about increased limits of UIM coverage, because he assumed that he did not have to ask about any specific coverage since Sawyer would provide him with the best coverage available.
Effective January 1, 1984, New Jersey insurers were required to provide to all policyholders "a written notice identifying and containing a buyer's guide and coverage selection form." N.J.S.A. 39:6A-23. The purpose of the guide was to inform insureds about changes in the New Jersey automobile insurance laws and to describe mandatory and optional limits for all available coverages including the availability of higher limits of UM/UIM coverage. N.J.A.C. 11:3-15.1 to 11:3-15.8.
Roslyn Oliva testified for defendants as to Allstate's customary practice in mailing communications with their renewal packages to their insureds. Oliva testified that by May 1984 Allstate had assembled and mailed a written notice containing a Buyer's Guide and a coverage selection form to each of its insureds. Similar written notices regarding UM/UIM coverage were included in a May 1984 letter, a September 1984 renewal package and an April 1985 renewal package. Plaintiff purchased the higher limits of the UM/UIM coverage in April 1985.
The trial judge found that information concerning changes in coverage were made available to plaintiff on September 29, 1980. In 1982, plaintiff was mailed information describing the uninsured and underinsured motorist coverage, and was again *200 notified on September 29, 1983, that additional underinsured motorist coverage was available. The trial judge also found as fact that Allstate complied with the legal requirements of informing insureds that they could increase the limits of their underinsured motorist coverage up to the bodily injury liability limits that they carried.
The judge noted that plaintiff did not deny receipt from Allstate of the informational material relating to the availability of underinsured motorist coverage, and characterized plaintiff as attempting to avoid the significance of the receipt of this information by alleging that Sawyer advised him to disregard it. He found plaintiff's testimony contrived, stating: "I do not believe plaintiff's testimony that he relied in any way on Sawyer as his insurance consultant to arrange for the best and highest coverage." He did not believe plaintiff's testimony that he thought Sawyer was taking care of his insurance needs or that plaintiff called Sawyer with respect to the mailings that he had received from Allstate in May 1984 and that Sawyer told him not to mail them back. The judge also found incredible plaintiff's wife's testimony.
The judge adopted as fact Sawyer's description of his usual practice of running up his client's name on a computer and advising the client as to the need for available coverage. He also found credible Sawyer's testimony that he would not choose limits of coverage for a client.
Since plaintiff failed to produce any testimony regarding Allstate's negligence as to the sufficiency of the mailings, the judge refused to find that the material was inadequate. The judge found the Allstate material mailed to insureds to be sufficient to alert them to the availability of increased underinsured motorist coverage. The judge concluded that plaintiff failed to prove by a preponderance of credible evidence that either Sawyer or Allstate itself was negligent. Thus, he dismissed the complaint and assessed costs of the suit against plaintiff.

*201 I.
Plaintiff alleges that he was erroneously denied his right to a trial by jury in his action against defendants. We agree.
Under the New Jersey Constitution (1947), Art. I, par. 9, a litigant has the "right of trial by jury [which] shall remain inviolate...." This has been held to guarantee the right to a trial by jury as it existed at common law at the time the New Jersey Constitution was adopted. In re LiVolsi, 85 N.J. 576 (1981); Manetti v. Prudential Property & Cas. Ins. Co., 196 N.J. Super. 317, 320 (App.Div. 1984). Defendants' position is that since reformation was the only remedy available to plaintiff, the action was one sounding in equity for which no right to jury trial existed at common law.
Defendants have urged that whether there was a breach of contract or negligence, if reformation were granted, the recovery would be the same since it is agreed that the parties must then go to arbitration, as required by the insurance contract, to determine the extent of the loss. The Law Division motion judge accepted this argument as his basis for determining that: "It is equitable relief that is sought. It is triable by the Court, not by the jury."
It has been generally held in New Jersey that reformation of a contract "is an issue peculiarly and solely of equitable cognizance." Asbestos Fibres, Inc. v. Martin Laboratories, Inc., 12 N.J. 233, 239 (1953). In Asbestos Fibres, our Supreme Court wrote that the consolidation of law and equity jurisdiction in the Superior Court did not "give new absolute rights to trial by jury, nor do they justify deviation from the rules." Ibid. Clearly, if we were to focus merely on the more appropriate relief sought by plaintiff, i.e., reformation of the contract, plaintiff would not appear to be entitled to a jury trial.
Plaintiff, on the other hand, correctly asserts that he had a separate cause of action against Sawyer, independent of his claim against Allstate. See Wasserman v. Wharton, Lyon & Lyon, 223 N.J. Super. 394 (App.Div. 1988); Barton v. Marlow, *202 47 N.J. Super. 255, 259 (App.Div. 1957). If Sawyer had not been Allstate's agent, reformation would not be possible. Thus, in that instance, plaintiff's action would have been for damages alone, and he would undoubtedly be afforded a trial by jury.
Defendants' argument that because Allstate was the direct writer of the insurance policy, plaintiff really had no cause of action against its agent Sawyer is untenable. We also find defendants' claim that Sawyer owed plaintiff a lesser standard of care since he was an insurance agent working for one company, as opposed to an insurance broker independent of any given insurance carrier, to be without authority in this State. See Walker v. Atl. Chrysler Plymouth, 216 N.J. Super. 255, 259 (App.Div. 1987); Sobotor v. Prudential Property & Cas. Ins. Co., 200 N.J. Super. 333, 336-38 (App.Div. 1984), citing Rider v. Lynch, 42 N.J. 465, 476 (1964).
Sawyer is the agent and employee of Allstate, and therefore, the doctrine of respondeat superior is applicable. It is because the negligence of the employee-agent is imputable to the employer-principal that reformation is a viable remedy. See Johnson v. MacMillan, 233 N.J. Super. 56, 60-61 (App.Div. 1989) (summarily remanded by the Supreme Court on October 23, 1989, to the Appellate Division for reconsideration of the stacking issue in light of arguments asserted in defendant's petition for certification with jurisdiction retained by Supreme Court). If Sawyer had been an independent broker, his negligence would not necessarily be imputed to the insurance company. Rider v. Lynch, 42 N.J. at 475; Johnson, 233 N.J. Super. at 60-61. We cannot conclude that because an agency relationship happens to exist, and plaintiff may thus be entitled to an equitable remedy of reformation, that plaintiff should be denied his inviolate right to a jury trial on the identical issues of duty and its breach that he would otherwise enjoy if no agency-employment relationship existed.
Defendants' reliance on Manetti, 196 N.J. Super. at 320, is misplaced. There we concluded that there is no right to a jury *203 trial for PIP benefits where the issue is what benefits, if any, are due. Ibid. Plaintiff's claim in Manetti was for PIP benefits which included claims for medical expenses, income continuation as well as essential services and was strictly statutory. Id. at 319. Defendant's objection to plaintiff's demand for a jury trial was sustained because this court agreed with the trial court that plaintiff's claim was a "creature of the Legislature ... [which] did not exist in the common law." Ibid. We also found in Manetti that "the mandatory obligations providing for PIP benefits when plaintiff's policy was purchased far outweighed the contractual character of the insurance policy issued by defendant to plaintiff." Id. at 320. Here, plaintiff's claim of breach of duty is a weightier issue than his request for reformation. Therefore, the possibility that plaintiff's insurance contract will be reformed should not deny him his inviolate right to jury trial on the issue of breach of duty.
The fact that it appears convenient to refer to the amending of insurance coverage as reformation in the instance where the effectively breaching party is an insurance agent is not to our view a sufficient circumstance to classify the action as historically equitable, thereby depriving the plaintiff of his inviolate right to a jury trial. See Shaner v. Horizon Bancorp, 116 N.J. 433, 447 (1989). Indeed, we question whether the remedy is properly classified as reformation in the traditional sense. The contract is one of adhesion not negotiation. See Allstate Ins. Co. v. Royal Globe Ins. Co., 195 N.J. Super. 598, 604 (App.Div. 1984). Nor do we find that plaintiffs in insurance cases have been held to the higher burden of proof of clear and convincing evidence required for general reformation of contract actions. See Central State Bank v. Hudik-Ross Co., Inc., 164 N.J. Super. 317, 323 (App.Div. 1978); Brodzinsky v. Pulek, 75 N.J. Super. 40, 48 (App.Div.), certif. den., 38 N.J. 304 (1962); see also Williston, Contracts § 1546, at 109 (3 ed. Jaeger 1970).
We are convinced that the kinds of issues raised by plaintiff's claims are those historically determined by a jury in an action at law. See Shaner, 116 N.J. 433. See also Rider v. Lynch, 42 *204 N.J. at 476; Barton v. Marlow, 47 N.J. Super. 255, 259 (App. Div. 1957); Marano v. Sabbio, 26 N.J. Super. 201, 205-06 (App. Div. 1953); Milliken v. Woodward, 64 N.J.L. 444, 448 (Sup.Ct. 1900). Not only are issues of breach of duty raised, but defense claims of contributory negligence for failure to read the Allstate literature must be litigated as well. But see Rider v. Lynch, 42 N.J. at 482. These are issues traditionally left for a jury to determine based upon standards of the reasonably prudent person under the same or similar circumstances. See B. Axe Enterprises v. Northeastern Fire Ins. Co. of Pa., 446 Pa. 119, 120, 285 A.2d 462, 463 (1971) (in a long line of cases the Pennsylvania Supreme Court has "established that reformation can be secured in an action at law where it is sought as an immediate prerequisite to obtaining a legal remedy"). Because this case must be retried, we address the remaining issues raised by the plaintiff.

II.
Plaintiff argues that the trial court improperly admitted Sawyer's testimony as to his habit or custom in conducting his business and in treating questions from clients. In his testimony, Sawyer admitted having no actual recollection of the events and conversations which plaintiff claimed took place. Instead, Sawyer testified as to his habit or custom in selling coverage and responding to telephone inquiries, and how he probably sold the policy to plaintiff.
Under Evid.R. 49, "[e]vidence of habit or custom whether corroborated or not is admissible to prove conduct on a specified occasion in conformity with the habit or custom." Plaintiff's reliance on Cwiklinski v. Burton, 217 N.J. Super. 506, 509 (App.Div. 1987), is misplaced. The court there merely found that the person actually charged with mailing letters should have testified. Sawyer was charged with responding to questions of policyholders, and therefore, under the requirement of Cwiklinski, Sawyer's testimony was appropriate.
*205 Plaintiff argues that since defendant's testimony is in effect "secondary evidence" without the support of corroborative testimony, it allows defendant to advance his version of the facts without "running the risk of sanction for tendering perjured or inaccurate testimony." This position is without merit. The evidence of Sawyer's custom was properly admitted into evidence based on the explicit language of Evid.R. 49. See State v. Radziwil, 235 N.J. Super. 557, 564-66 (App.Div. 1989).

III.
Plaintiff asserts that the motion judge improperly denied his motion to exclude evidence regarding his failure to read the policy or the notices sent him by defendants. Plaintiff maintains that his failure to check his policy coverage did not constitute contributory negligence. Plaintiff relies on his own testimony that he asked defendant to obtain the best coverage available. Plaintiff further contends that a review of the policy and some of the notices sent to him by defendant Allstate reveals that their language is vague, misleading, complex and technical.
We are satisfied that such testimony and the Allstate literature may be properly admitted as evidence. The issues presented regarding credibility, knowledge, reliance, readability of the documents, and how reasonable persons would conduct their affairs are properly left to the jury's determination, which we have concluded plaintiff is entitled to enjoy. See Schustrin v. Globe Indemnity Co. of New York, 44 N.J. Super. 462, 465-66 (App.Div. 1957).
We reverse and remand for further proceedings consistent with our holding and plaintiff's right to trial by jury.