587 A.2d 615

BIBI WEINISCH, A/K/A BOB WAYNE, PLAINTIFF–RESPONDENT
AND CROSS–APPELLANT, v. THOMAS E. SAWYER AND ALL-
STATE INSURANCE COMPANY, DEFENDANTS–APPEL-
LANTS AND CROSS–RESPONDENTS.

Argued November 27, 1990—Decided March 14, 1991.

334

*David J. D'Aloia* argued the cause for appellants and cross-respondents (*Saiber, Schlesinger, Satz & Goldstein,* attorneys; *David J. D'Aloia* and *Joan M. Schwab,* on the briefs).

*Christopher J. Hanlon* argued the cause for respondent and cross-appellant (*Gross & Hanlon,* attorneys; *Gary S. Bernstein,* on the briefs).

The opinion of the Court was delivered by

POLLOCK, J.

This case requires us to decide whether reformation is the appropriate remedy when an insurance agent negligently fails to inform an insured about available coverage, and if so, whether the insured is nonetheless entitled to a jury trial. Plaintiff, Bibi Weinisch, a/k/a Bob Wayne, sued his insurer, Allstate Insurance Company (Allstate), and its agent, Thomas E. Sawyer, for their failure to inform him of the availability of higher underinsured motorist (UIM) coverage under his automobile insurance policy. The trial court granted defendants' motion to strike plaintiff's jury demand, and after trial entered a judgment for defendants. The Appellate Division reversed and remanded, holding that reformation was not plaintiff's sole

remedy and that the underlying issues justified a jury trial. 237 *N.J.Super.* 195, 567 *A.*2d 259 (1989). We granted certification, 121 *N.J.* 658, 583 *A.*2d 345 (1990), and now reverse the judgment of the Appellate Division and reinstate the judgment of the trial court. We hold that when an insured sues the insurer and its agent for the agent's failure to inform the insured of available coverage, the proper remedy is reformation, to which a right to trial by jury does not attach.

–I–

Many of the material facts are undisputed. Plaintiff sustained personal injuries and automobile damage when his car was struck from the rear on May 25, 1984. He sued the negligent driver and settled with her insurance company for the policy limits of $100,000. Plaintiff alleges that the settlement did not fully compensate him for his injuries. He was insured by Allstate under an automobile policy with liability coverage of $250,000 per person, $500,000 per event, and a $1,000,000 liability umbrella. His uninsured/underinsured (UM/UIM) motorist coverage, however, was only $15,000 per person or $30,000 per event, the statutory minimum. Plaintiff contends that Allstate and Sawyer breached a duty to inform him of the availability of optional higher limits of UM/UIM coverage.

From 1966 to 1983, Allstate automatically renewed plaintiff's automobile policy on a yearly basis. In 1969, plaintiff instructed Sawyer to increase his bodily injury liability coverage to the highest available amount, $250,000/500,000. In 1973, pursuant to a change in New Jersey law, *N.J.S.A.* 17:28–1.1, every automobile policy, including plaintiff's policy with Allstate, was amended to include a minimum amount of uninsured motorist coverage. In 1980, Allstate offered UIM coverage to all insureds, including plaintiff.

In 1982, Allstate had mailed to plaintiff information describing UM/UIM coverage, and in 1983, Allstate notified plaintiff of the availability of additional UIM coverage. A 1984 statute

required insurers to provide all policyholders with a coverage-selection form and a buyer's guide in order to inform insureds about both insurance-law changes and policy limits, including UM/UIM coverage. New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984, *L.* 1983, *c.* 362 (codified in relevant part at *N.J.S.A.* 39:6A–23); *see also N.J.A.C.* 11:3–15.1 to 3–15.9 (regulations promulgated by Commissioner of Insurance to implement statute). By May 1984, Allstate had mailed guides and forms to all of its insureds, including plaintiff. Plaintiff acknowledges that before the accident he received the 1984 packet of documents from Allstate, including information about available coverage and a coverage-selection form that he was to complete and return.

At this point, the parties' factual versions diverge. According to plaintiff, in May 1984 he telephoned Sawyer, an Allstate sales and service agent, concerning the documents. Plaintiff testified that Sawyer advised him to ignore the documents unless he wanted to reduce his coverage or lower his premiums. Purportedly following Sawyer's advice, plaintiff claims he discarded the Allstate packet. Plaintiff said that he did not read the brochures because he felt that his premiums were high enough to provide plenty of coverage. He testified that he relied on Sawyer to let him know if he needed any additional coverage.

Sawyer's testimony contradicted plaintiff's version. Sawyer did not recall the May 1984 conversation with plaintiff. Sawyer's usual practice was to answer specific questions when policyholders called about those documents. When callers indicated that they did not understand the form, Sawyer reviewed the entire form with them and line by line explained the coverages or changes. According to Sawyer, he never would have advised plaintiff not to complete and return the forms. If a policyholder had UM/UIM coverage lower than the policyholder's liability coverage, Sawyer would recommend an increase to the level of that coverage. Sawyer stated that if

plaintiff had called him, he would have advised plaintiff to purchase additional UM/UIM coverage.

The complaint alleged that plaintiff's UIM coverage, when combined with his $100,000 settlement, was inadequate to compensate him for his injuries. Plaintiff sought to reform his policy and to recover compensatory and punitive damages. Alleging negligence, breach of contract, and breach of statutory duty, he demanded a jury trial.

Defendants denied plaintiff's allegations and moved to strike his jury demand on the ground that the case was essentially equitable. Relying on a policy provision requiring arbitration if Allstate and the insured could not agree on the amount of damages, defendants also moved to limit the trial to liability. The court granted defendants' motions to strike the jury demand and to so limit the trial. It also severed the punitive damage claim.

At the bench trial, the court found plaintiff's version to be incredible and his testimony "contrived":

> To be more specific, I do not believe the plaintiff's testimony that he relied in any way on Sawyer as his insurance consultant to arrange for the best and the highest coverage.
>
> \* \* \* \* \* \* \* \*
>
> I do not believe plaintiff's testimony that early May of 1984 that plaintiff called Sawyer with respect to the mailings plaintiff received from Allstate and that Sawyer told the plaintiff not to mail back the coverage selection form and that Sawyer would take care of it, or words to that effect.

By contrast, the court accepted Sawyer's description of his usual business practices. Based on that resolution of the credibility question, the court found that plaintiff did not rely on Sawyer as his insurance consultant to arrange for the highest coverages available; rather, plaintiff himself determined the extent of coverage and used Sawyer to implement the coverages plaintiff had selected. The court also found that plaintiff received from Allstate sufficient information to inform him of the availability of increased UIM coverage. In sum, the court found that the documents that Allstate had sent to

plaintiff sufficed to alert him to the availability of additional UM/UIM coverage and that plaintiff had failed to establish that either Sawyer or Allstate was negligent. The court therefore entered judgment in favor of defendants.

The Appellate Division reversed. 237 *N.J.Super.* at 205, 567 *A.*2d 259. Convinced that plaintiff was entitled to bring an action directly against Sawyer for money damages and that "the kinds of issues raised by plaintiff's claims are those historically determined by a jury in an action at law," *id.* at 203, 567 *A.*2d 259, the court held that plaintiff was entitled to a jury trial under article I, paragraph 9 of the New Jersey Constitution.

–II–

In concluding that plaintiff was entitled to a jury trial, the Appellate Division proceeded on the erroneous premise that he was entitled to relief other than reformation. The court also erred in emphasizing the underlying issues rather than the relief requested.

–A–

Contrary to the Appellate Division, we believe that the appropriate remedy for plaintiff, if he had prevailed on his claim, would have been reformation of his policy. No matter how described, plaintiff's claim amounts to a request that the court reform the policy to provide higher UIM coverage. Because Sawyer is an Allstate agent rather than an independent insurance broker, plaintiff's claim is properly directed at Allstate for reformation of the policy.

The appropriateness of reformation and the corresponding inappropriateness of damages in this case derive initially from the distinction drawn by New Jersey law between insurance agents, such as Sawyer, and insurance brokers. *Compare N.J.S.A.* 17:22A–2f (defining insurance agent) *with*

*N.J.S.A.* 17:22A–2g (defining insurance broker); *see also* 16 J. Appleman, *Insurance Law & Practice* § 8725 (1981) (Appleman) (discussing distinction between agents and brokers). An insurance agent owes a fiduciary duty to the insurance company, *see Bohlinger v. Ward & Co.*, 34 *N.J.Super.* 583, 591, 113 *A.*2d 38 (App.Div.1955), *aff'd*, 20 *N.J.* 331, 120 *A.*2d 1 (1956), and acts not for the insured but for the insurer as its employee. *See Volker v. Connecticut Fire Ins. Co.*, 22 *N.J.Super.* 314, 325, 91 *A.*2d 883 (App.Div.1952). An insurance broker, on the other hand, owes a duty directly to his or her principal, the insured. *See John Roach, Jr., Inc. v. Pingpank*, 39 *N.J.Super.* 336, 339, 121 *A.*2d 32 (App.Div.1956); Appleman, *supra*, § 8725 at 332–33. Notwithstanding the similarity of their activities, the agent and the broker stand in different relationships to both insured and insurer. The essential difference is that the broker represents the insured, and the agent represents the insurance company.

▮ Both agents and brokers are obliged to inform insureds of available coverage. Agents, like brokers, are obligated to exercise good faith and reasonable skill in advising insureds. *Sobotor v. Prudential Property & Casualty Ins. Co.*, 200 *N.J.Super.* 333, 337–41, 491 *A.*2d 737 (App.Div.1984); *see also Rider v. Lynch*, 42 *N.J.* 465, 476, 201 *A.*2d 561 (1964) (discussing broker's duty); *Walker v. Atlantic Chrysler Plymouth*, 216 *N.J.Super.* 255, 259–60, 523 *A.*2d 665 (App.Div.1987) (citing *Sobotor* ).

▮ Because of their different roles, however, the remedy differs for breach of their duty to disclose. *See Avery v. Arthur E. Armitage Agency*, 242 *N.J.Super.* 293, 299, 576 *A.*2d 907 (App.Div.1990). When a broker's negligence leads to inadequate coverage, he or she is liable to pay money damages to the insured for the resulting loss. *Rider, supra*, 42 *N.J.* at 476, 201 *A.*2d 561. Because a broker, unlike an agent, is not employed by the insurer, the broker's breach will not support an action for reformation. *Id.* at 475, 201 *A.*2d 561; *Johnson v.*

*MacMillan,* 233 *N.J.Super.* 56, 61–62, 558 *A.*2d 24 (App.Div.), *summarily remanded on other grounds,* 118 *N.J.* 199, 570 *.A.*2d 962 (1989). So separate are the broker and the insurer that when the insured recovers against the broker, the broker may not obtain indemnification from the insurer. *Avery, supra,* 242 *N.J.Super.* at 297, 576 *A.*2d 907. By contrast, when the policy contains inadequate coverage because of the negligence of the insurer's agent, the insurer itself can be held responsible and reformation is the appropriate remedy. *Sobotor, supra,* 200 *N.J.Super.* at 337, 491 *A.*2d 737. Consequently, reformation, although unavailable in actions involving an independent broker's negligence, is singularly appropriate in an action involving the negligence of an insurer's agent. Other state courts have reached the same result. *See, e.g., Lumbermen's Ins. Co. v. Heiner,* 74 *Ariz.* 152, 156, 245 *P.*2d 415, 419 (1952) (policy reformed to include comprehensive insurance covering flood loss; judgment entered against insurer but not against its agents who "were authorized by the insurance companies to do what they did in the premises and therefore the acts were the acts of their principal"); *Lippert v. Bailey,* 241 *Cal.App.*2d 376, 381–84, 50 *Cal.Rptr.* 478, 481–82 (1966) (no cause of action against agent when plaintiff settled with insurer in action to reform coverage); *Gibbs v. Home Ins. Co.,* 252 *A.D.* 805, 805, 298 *N.Y.S.* 856, 857 (1937) (no cause of action directly against agent for agent's procurement of inadequate coverage), *appeal dismissed,* 277 *N.Y.* 529, 13 *N.E.*2d 459 (1938). *But see Austin v. Fulton Ins. Co.,* 498 *P.*2d 702, 704 (Alaska 1972) (agent may be held liable to insured for negligent failure to obtain coverage); *McAlvain v. General Ins. Co.,* 97 *Idaho* 777, 780, 554 *P.*2d 955, 958 (1976) (insurance agent may be liable in tort for obtaining inadequate coverage).

The Appellate Division "question[ed] whether the remedy is properly classified as reformation in the traditional sense." 237 *N.J.Super.* at 203, 567 *A.*2d 259. Our answer is that reformation is the appropriate remedy. Weinisch seeks to recover the amount he would be due if the policy had contained higher

UM/UIM limits. A judgment ordering greater coverage than that contained in the policy is inescapably one for reformation. Calling such relief anything other than reformation is merely wordplay. Contrary to the Appellate Division's opinion, the relief is characterized as reformation not because it is "convenient," *ibid.*, but because the characterization is correct. Although the allegation of an agent's breach of a duty of care carries tort overtones, the contractual relationship between insured and insurer dominates not only the relationship between them, but also that between the insured and the agent. Here, Weinisch contracted with Allstate for an insurance policy, not with Sawyer for professional advice. Accordingly, his remedy is best understood as one that sounds not in tort, but in contract against Allstate. *Cf. Spring Motors Distribs., Inc. v. Ford Motor Co.*, 98 *N.J.* 555, 579–82, 489 *A.*2d 660 (1985) (economic losses sustained by commercial purchaser are better resolved under contract, rather than tort, law).

Weinisch's coverage, moreover, is governed not only by the UM/UIM limits, but also by other policy provisions. The policy provides that any dispute over damages under the UM/UIM clause is subject to arbitration. Thus, if a jury were to consider the case, it would determine only whether Sawyer was negligent. That verdict would then be followed by a referral to an arbitrator for the determination of damages. Insofar as he invokes the judicial process, plaintiff seeks not a jury verdict for money damages, but reformation followed by an arbitration proceeding to assess those damages. If Weinisch were allowed to proceed directly against Sawyer for damages, he would effectively circumvent the arbitration clause.

–B–

Because plaintiff's claim is for reformation, he is not entitled to a jury trial. Article I, paragraph 9 of the New Jersey Constitution of 1947 provides that "[t]he right of trial by jury shall remain inviolate * * *." As construed, this provision

guarantees the right only to the extent that it existed at common law when the New Jersey Constitution was adopted. *Shaner v. Horizon Bancorp.*, 116 *N.J.* 433, 447, 561 *A.*2d 1130 (1989); *In re LiVolsi*, 85 *N.J.* 576, 587, 428 *A.*2d 1268 (1981). We have never determined whether the historical focus of that right is the 1947 Constitution, *LiVolsi, supra*, 85 *N.J.* at 587, 428 *A.*2d 1268; the 1844 Constitution, *Steiner v. Stein*, 2 *N.J.* 367, 378–79, 66 *A.*2d 719 (1949); or the 1776 Constitution, *Montclair v. Stanoyevich*, 6 *N.J.* 479, 485, 79 *A.*2d 288 (1951), and we need not make that determination here. *See Shaner, supra*, 116 *N.J.* at 447, 561 *A.*2d 1130. Notwithstanding the uncertainty about which constitutional moment defines the right to trial by jury, the definition has always focused on the traditional distinction between law and equity. *Ibid.; LiVolsi, supra*, 85 *N.J.* at 587–88, 428 *A.*2d 1268; *Steiner, supra*, 2 *N.J.* at 379, 66 *A.*2d 719.

Traditionally, the right to a jury trial attaches in legal but not equitable actions. *Kugler v. Banner Pontiac-Buick, Opel, Inc.*, 120 *N.J.Super.* 572, 581, 295 *A.*2d 385 (Ch.Div.1972). In actions seeking equitable relief rather than money damages, litigants generally do not enjoy a right to trial by jury. *LiVolsi, supra*, 85 *N.J.* at 587, 428 *A.*2d 1268; *O'Neill v. Vreeland*, 6 *N.J.* 158, 169–70, 77 *A.*2d 899 (1951). As an action in equity, a claim for reformation does not trigger the right to a jury trial. *Asbestos Fibres, Inc. v. Martin Laboratories*, 12 *N.J.* 233, 239–40, 96 *A.*2d 395 (1953); *see also Johnson v. Holbrook*, 302 *S.W.*2d 608 (Ky.1957) (no right to jury trial when seeking reformation); *Scontsas v. Citizens Ins. Co.*, 112 *N.H.* 47, 47, 289 *A.*2d 64, 65 (1972) (same); *Chopping v. First Nat'l Bank*, 419 *P.*2d 710, 715 (Wyo.1966) (same), *cert. denied*, 387 *U.S.* 935, 87 *S.Ct.* 2061, 18 *L.Ed.*2d 998 (1967). In determining whether a case is primarily legal or equitable, we look to the historical basis for the cause of action and focus on the requested relief. *E.g., Shaner, supra*, 116 *N.J.* at 447–55, 561 *A.*2d 1130; *LiVolsi, supra*, 85 *N.J.* at 587–90, 428 *A.*2d 1268; *Asbestos Fibres, supra*, 12 *N.J.* at 239–40, 96 *A.*2d 395.

The Appellate Division, in considering whether a jury trial was warranted, placed undue emphasis on the issues rather than the remedy. 237 *N.J.Super.* at 203, 567 *A.*2d 259. Although "the nature of the underlying controversy" is useful "in determining whether the cause of action has been historically primarily equitable or legal in nature," *Shaner, supra,* 116 *N.J.* at 450–51, 561 *A.*2d 1130, the remedy remains the most persuasive factor. Thus, in *Shaner,* we refused plaintiff a jury trial in an action under the Law Against Discrimination, *N.J. S.A.* 10:5–1 to 5–42 (LAD). Despite Shaner's insistence that he sought only money damages, *Shaner, supra,* 116 *N.J.* at 450, 561 *A.*2d 1130, we noted that "[a]vailable relief under the LAD is predominantly equitable in nature," *id.* at 453, 561 *A.*2d 259, and concluded that "LAD actions brought in courts cannot be equated to actions cognizable at common law involving traditional legal issues, and therefore the plaintiff bringing an action under the LAD has no right to jury trial," *id.* at 455, 561 *A.*2d 1130. As in *Shaner,* we decline to accept plaintiff's characterization of the relief sought. Weinisch's suit for higher UIM coverage, like Shaner's suit under the LAD, cannot be equated to an action involving legal rather than equitable issues and relief.

Both this case and the companion case, *Rodio v. Smith,* 123 *N.J.* 345, 587 *A.*2d 621 (1991), involve negligence allegedly committed by an insurer's agent, not by an independent broker. The Appellate Division, nonetheless, was concerned about the right to trial by jury in cases involving brokers. It perceived the difference in treatment, depending on the presence of an agency relationship between the salesperson and the insurer, as fortuitous. 237 *N.J.Super.* at 202, 567 *A.*2d 1130. The difference, however, is the product not of chance, but of careful analysis of the relationships of the parties. *See* Appleman, *supra,* § 8725. Because the relationship between an insurer and its agent renders the insurer responsible for the acts of the agent, the appropriate relief is reformation. As an equitable

form of relief, reformation should be resolved by a court sitting without a jury.

By concentrating on the requested remedy, moreover, we believe that we advance efficient judicial administration. Undue emphasis on the underlying issues would entangle litigants and courts in wasteful wrangling over the identity of the entity that is to determine the facts. In sum, we conclude that an insured seeking reformation in an action against an insurer and its agent is not entitled to a jury trial.

The judgment of the Appellate Division is reversed, and the judgment of the Law Division dismissing the complaint is reinstated. No costs.

*For reversal and reinstatement* —Chief Justice WILENTZ and Justices POLLOCK, CLIFFORD, HANDLER, GARIBALDI and STEIN—6.

*Opposed*—none.