233 N.J. Super. 56 (1989)
558 A.2d 24
CARL O. & MILDRED JOHNSON, PLAINTIFFS-RESPONDENTS/CROSS-APPELLANTS,
v.
THOMAS R. MAC MILLAN, DEFENDANT, AND THE PUFFER AGENCY, INC., A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT/THIRD-PARTY PLAINTIFF/CROSS-RESPONDENT, AND SELECTIVE RISKS INSURANCE COMPANY, DEFENDANT-APPELLANT/THIRD-PARTY DEFENDANT/CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 11, 1989.
Decided May 4, 1989.
*57 Before Judges PRESSLER, O'BRIEN and STERN.
Floyd F. Lombardi argued the cause for defendant-appellant/third-party plaintiff/cross-respondent The Puffer Agency, Inc. (De Sevo, Cerutti & Lombardi, attorneys; Floyd F. Lombardi, of counsel and on the brief).
*58 Lewis Stein argued the cause for plaintiffs-respondents/cross-appellants Carl O. and Mildred Johnson (Nusbaum, Stein, Goldstein, Bronstein & Compeau, attorneys; Lewis Stein, on the brief).
John D. Allen, III, argued the cause for defendant-appellant/third-party defendant/cross-appellant Selective Risks Ins. Co. (Harwood Lloyd, attorneys; John D. Allen, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Plaintiffs Carl and Mildred Johnson sustained serious injuries on November 6, 1983, when their car, which Mr. Johnson was driving and in which Mrs. Johnson was a passenger, collided with an automobile owned and operated by defendant Thomas Mac Millan, later determined in a bifurcated jury trial to have been 100% negligent. Mac Millan, however, had only minimum $15,000/30,000 coverage. The Johnson policy did not have an underinsured motorist (UIM) endorsement. The issues raised by this appeal involve the questions of whether either defendant The Puffer Agency, Inc. (Puffer), plaintiff's insurance broker, or defendant Selective Risks Insurance Company (Selective), plaintiff's insurer, is responsible for the omission of that coverage in their policy and, if so, the amount of damages to which plaintiffs are entitled from either or both of them and the rights of defendants inter se.
The facts respecting coverage are basically undisputed. Plaintiffs had been clients of Puffer since the 1950's, Puffer having attended to all their homeowners, commercial and automobile insurance needs. The automobile liability policy here in question was issued by Selective with whom Puffer had a broker/agency agreement as it did with other insurers whom it represented. There was no exclusivity on either side. The policy was a renewal policy issued in January 1983 for a one-year term commencing February 1, 1983. It covered four vehicles, providing liability coverage in the amount of $200,000 *59 and the minimum uninsured motorist (UM) coverage of $15,000/30,000. Because the policy was written prior to the January 1, 1984 effective date of the amendment of N.J.S.A. 17:28-1.1, there was no obligation on the carrier either to provide minimum UIM insurance or to offer a UIM option directly to the insured. Nevertheless, UIM coverage was then available at minimal rates in the maximum amount of $100,000/200,000, which would have been available to plaintiffs because of their $200,000 liability limit. The president of Puffer, Guy Puffer, testified at his deposition that while it was he who personally attended to plaintiffs' insurance needs and while they almost invariably followed his recommendations, he did not recommend UIM coverage to them because he did not know about its existence until after the accident. It nevertheless appears undisputed that Selective sent all of its broker-agents a notice respecting the availability of that coverage in 1973 and again in May 1983, prior to this accident. It is also undisputed that by express agreement, both Puffer and Selective relied on the periodic mailings of an organization known as ISO (Insurance Services Office) to keep brokers apprised of current coverage and rating information.
In a series of orders entered between October 1986 and August 1988,[1] the trial judge made the following determinations and dispositions. He held that Puffer was negligent in failing to recommend UIM coverage to plaintiffs. He held that that negligence warranted reformation of Selective's policy to include maximum UIM coverage but that Selective was entitled to full indemnification from Puffer. He directed arbitration of plaintiffs' damages under the arbitration provision of the policy, a proceeding which took place and resulted in an award of *60 $250,000 to plaintiff Carl Johnson and $500,000 to plaintiff Mildred Johnson. He refused to "stack" the coverages. He deducted from the $100,000 UIM coverage available to each the $10,000 each had received from Mac Millan's carrier, and from plaintiff Mildred Johnson's UIM recovery, the additional sum of $62,500 paid her by Selective in settlement of her negligence claim against her husband, apparently made prior to the jury's determination that he was not negligent in causing the accident. The judge also denied plaintiffs' application for prejudgment interest.
By appeal and cross-appeals, Puffer challenges the holding that it is obliged to indemnify Selective for its losses resulting from the reformation. It does not challenge the conclusion that it was negligent. Selective challenges the holding reforming its policy to include UIM coverage, complaining as well, as does Puffer, of the judge's conclusion that plaintiffs were entitled to maximum UIM coverage. Plaintiffs appeal from the holding denying their application for stacking, for prejudgment interest, and for deduction of their other recoveries from their respective total damages rather than from the total UIM coverage respectively available.
We deal first with the issues in controversy between Puffer and Selective. With respect to Puffer's negligence, it is first clear that Puffer is a licensed insurance broker acting as the agent of the insured in placing its client's liability insurance. The relationship between broker and client in this context and the resultant duty owed by broker to client were defined by Rider v. Lynch, 42 N.J. 465, 476-477 (1964), in which Justice Francis made clear that
One who holds himself out to the public as an insurance broker is required to have the degree of skill and knowledge requisite to the calling. When engaged by a member of the public to obtain insurance, the law holds him to the exercise of good faith and reasonable skill, care and diligence in the execution of the commission. He is expected to possess reasonable knowledge of the types of policies, their different terms, and the coverage available in the area in which his principal seeks to be protected. If he neglects to procure the insurance or if the policy is void or materially deficient or does not provide the coverage he *61 undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby.
* * * * * * * *
Thus, an insurance broker, in dealing with his clients, ordinarily invites them to rely upon his expertise in procuring insurance that best suits their requirements. It is not necessary for the client in order to establish a breach of duty to prove that he laid out for the broker the elements of a contract of insurance. It is sufficient to show that he authorized procurement of the insurance needed to cover the risks indicated and that the broker agreed to do so but failed or neglected to perform his duty. The terms of the contract to procure the insurance, the scope of the risk and subject matter to be covered, may be found by implication. The principal does not sue on a contract of insurance; he seeks recovery for the loss occasioned by the failure to procure such a contract or such a valid contract. [citations omitted]
In Wasserman v. Wharton, Lyon & Lyon, 223 N.J. Super. 394, 404-406 (App.Div. 1988), we applied these principles to a situation in which, as here, a broker, prior to the January 1, 1984 effective date of the amendment of N.J.S.A. 17:28-1.1, had failed to advise its client of the availability of optional UIM coverage and to recommend its acquisition. See also Walker v. Atl. Chrysler Plymouth, 216 N.J. Super. 255 (App.Div. 1987). And see Sobotor v. Prudential Property & Cas. Ins. Co., 200 N.J. Super. 333, 341 (App.Div. 1984). In his deposition, Guy Puffer, Puffer's president, admitted that he did not recommend UIM coverage to plaintiffs because he did not know about it. The trial judge concluded that this explanation bespoke professional negligence as a matter of law. We agree, and Puffer does not now argue to the contrary.
The next question is whether Puffer's negligence is imputable to or was contributed to by Selective so as to warrant reformation of Selective's policy to include UIM coverage in any amount. The trial judge concluded that reformation was appropriate based on a respondeat superior principle. He relied on Sobotor v. Prudential, supra, and Regino v. Aetna Cas. & Sur. Co., 200 N.J. Super. 94 (App.Div. 1985). We are, however, satisfied that he erred in this holding. As a matter of elementary agency law, the negligence of an employee-agent is imputable to the employer-principal, who must answer for it. *62 That was the situation in Sobotor. The Prudential policy there was accordingly reformed to include maximum UIM coverage because the error in failing to recommend adequate UIM coverage was that of Prudential's employee-agent, one Charles Redmond. Ordinarily, however, and absent special circumstances, the negligence of a non-employee agent, i.e., an independent contractor, is not imputed to the principal. See, e.g., JMB Enterprises v. Atl. Emp. Ins., 228 N.J. Super. 610 (App.Div. 1988). And it has long been recognized that this non-imputation applies in the case of an independent broker placing insurance for a client with an insurance company. See Rider v. Lynch, supra, 42 N.J. at 475.
Applying these principles to the facts here, we note first that the Puffer-Selective relationship is governed by a contract between them denominated "Agency Agreement." Paragraph 6 of the agreement specifically provides that
The Agent is an independent contractor and this Agreement is not intended to and does not create an employer-employee relationship. The Company shall not be responsible for any Agency expenses, obligations or liabilities whatsoever, except as specifically provided herein.
Despite this general declaration  indeed pursuant to it  the agreement does specify certain acts of the broker/agent for which the company accepts responsibility. Most notably, the agreement authorizes the broker "to bind and execute contracts of insurance" on behalf of the company and to forward to the company and to receive from it a variety of transmittals. It is, therefore, clear to us that the broker/agent's status is a hybrid one. When he acts for the company within the terms of the agreement, he is then acting as its authorized agent in such a manner that his acts are its acts.
This is precisely what happened in Regino v. Aetna Cas. & Sur. Co., supra. There, an independent broker with the authority to bind coverage telephoned Aetna and bound coverage so verbally. He failed thereafter to confirm the coverage in writing, as he was obliged to do by his agency agreement with the carrier, and, consequently, the appropriate policy never issued. We there held that the broker's negligence was imputable *63 to the insurer and that the policy should, therefore, be reformed to include the omitted coverage. But the conceptual basis of our doing so clearly rested upon the premise that once the binder was verbally communicated, the company was on notice of its obligation and that notice, moreover, justified reformation since the broker, in performing the binding function, was acting primarily as the company's agent rather than the client's. Here, however, the function which was negligently performed by the broker was not one encompassed by the scope of its agency for the company. Rather, it was one involving only its relationship to its client and was the very function to which Rider ascribed the duty of acting with "the degree of skill and knowledge requisite to his calling." 42 N.J. at 477. That is to say, when Puffer undertook to evaluate a client's insurance needs and to make recommendations to him, it was acting not as the agent for any one of the several insurers it represented but only for its own client. Puffer's actionable negligence here was in failing to recommend a particular available coverage. That act of negligence was not, by application of respondeat superior, an act of negligence of Selective.
Nor do we find any other basis in this record for concluding that Selective's own actions vis-a-vis this policy constituted negligence, fault, or mistake or any other conduct warranting reformation. First, we note that any suggestion that the 1984 amendment of N.J.S.A. 17:28-1.1 imposes a non-delegable duty on an automobile liability carrier to advise its insured of the availability of additional optional UIM coverage is inapposite here because this policy was issued long before the effective date of the amendment. We are also aware that Puffer contended in the trial court and again before us that Selective committed an independent act of negligence by failing adequately to advise it of the availability of the coverage. We reject this contention essentially for the reasons stated by the trial judge in his oral opinion of June 3, 1987. We agree that there was insufficient demonstration of Selective's negligence in this regard to raise a triable question as fact. As we have *64 noted, there was indisputable evidence of direct communication on the subject of UIM coverage from Selective to Puffer in 1973 and 1983, and although the 1983 communication was after the date of issuance of the policy, it preceded the date of the accident. Hence, an endorsement could have been then obtained providing plaintiffs with the coverage before the accident. Moreover, as noted, there was proof that both parties, by way of their agreement, contemplated transmittal to brokers of rating and coverage information by ISO, as was done here. In view of these circumstances, the judge was of the view that at the very least Puffer would have been obliged to introduce expert proof respecting an industry practice, custom and usage vis-a-vis agent-broker communication with which Selective failed to conform. We agree. Since Puffer proffered no such proof and since there was both direct and indirect notice to it of the coverage, we are satisfied that there was no question of fact raised which could have justified a finding that Selective had itself been negligent.
We understand that the question of Selective's negligence was considered at trial in the context of its right to indemnification from Puffer and that since we have held that the reformation remedy was improvidently granted, there is no need to deal with that indemnification question so posited. But the question of Selective's negligence has other relevance since, if it had been negligent, it would have been a joint tortfeasor owing joint and several liability to plaintiffs and a duty of contribution to Puffer.[2] Because we affirm the trial judge's conclusion that Selective was not negligent either directly or vicariously, it has no responsibility for plaintiffs' loss, which must consequently be borne by Puffer alone.

* * *

*65 [HERE THE COURT ADDRESSED OTHER ISSUES.]
We remand to the trial court for entry of judgment dismissing all claims by all parties against Selective and for entry of judgment in favor of plaintiffs and against Puffer consistent with this opinion. On the remand, the court shall determine, consistent with this opinion, the additional amount to which plaintiffs are entitled to from Puffer to compensate them for the deprivation of the right to have obtained timely UIM payments from their insurer and shall accordingly determine both the date on which they would have received those payments had they had UIM coverage and the rate of interest to which they are entitled on the amount of their UIM benefits commencing from that date.
NOTES
[1] All these orders were entered on motion except the order of June 18, 1987, which was entered following a "trial," which consisted, however, only of the offer of deposition testimony and exhibits and several questions asked by plaintiff's attorney of a Selective employee, whose deposition was also submitted. In fact, the trial differed little, if at all, from a summary judgment proceeding.
[2] Obviously, Puffer's negligence precludes it from obtaining a common-law indemnification remedy from Selective. See, e.g., Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 566 (1980); Polidori v. Kordys, Puzio & Di Tomasso, 217 N.J. Super. 424, 432 (App.Div. 1987).