233 N.J. Super. 219 (1989)
558 A.2d 508
STANLEY MAZUR, PLAINTIFF,
v.
SELECTED RISKS INS. CO., DEFENDANT-APPELLANT, AND KEN CURTIS, T/A KEN CURTIS AGENCY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 25, 1989.
Decided May 16, 1989.
*220 Before Judges PRESSLER, SCALERA and STERN.
Bruce A. Wallace III, argued the cause for appellant (Capehart and Scatchard, attorneys, Bruce A. Wallace III on the brief).
Michael O. Kassak argued the cause for respondent Curtis, (White and Williams, attorneys, Michael O. Kassak, on the brief).
*221 Kenneth G. Andres, Jr., argued the cause for respondent Mazur (Segal, Andres and Kelley, attorneys, Kenneth G. Andres, Jr., on the letter brief).
The opinion of the court was delivered by SCALERA, J.A.D.
Plaintiff Stanley Mazur (Mazur) was injured in an automobile accident in 1984. Thereafter, he sought payment from Selected Risks Insurance Company (Selected) for personal injury protection (PIP) benefits. Selected denied Mazur's request because his vehicle was insured under a commercial policy, and as such, there was no provision for PIP benefits.
Mazur instituted this suit against Selected to recover for PIP benefits, and also against his insurance broker, Ken Curtis, t/a Ken Curtis Agency (Curtis) based on the latter's failure to give him appropriate advice and insurance coverage. At trial, the jury returned answers to a series of special interrogatories. By those answers, it determined that Curtis was negligent in failing to properly advise Mazur and provide him with the insurance coverage for his medical expenses and awarded him $10,000 to cover his medical bills. It also determined that even though the insurance policy did not specify that no PIP benefits coverage was included, Selected was not negligent.
After the jury verdict was returned the parties agreed to have the trial court rule on Curtis' crossclaim against Selected for indemnification. By letter opinion it determined that Selected must indemnify Curtis because Curtis' negligence "did not proximately cause" the loss. It is this latter decision that is the focus of this appeal.
The salient facts, as settled by the jury verdict and by stipulation, may be recited briefly. Mazur was employed as a freight conductor for Conrail. In 1984, prior to the accident, he owned an Oldsmobile Cutlass and a small Subaru pickup truck. During the winter, Mazur supplemented his income by cutting *222 firewood on a farm and delivering it to homes in the area with his Subaru pickup truck.
Mazur had dealt with Curtis as his insurance broker for several years, and had obtained automobile insurance from him on several occasions. Prior to the accident, Mazur went to Curtis to arrange insurance coverage for his pickup truck and spoke with Curtis' son, Kevin Curtis (Kevin). Mazur told him that he wanted "full coverage" on the truck similar to that which he had on the Oldsmobile (which carried PIP benefits coverage). When Kevin learned that Mazur used the truck to deliver firewood, he told Mazur that he could purchase the same insurance coverage at a cheaper rate if it was covered as a commercial vehicle, but assured Mazur that the coverage would be "the same" as that on the Oldsmobile. Kevin erroneously thought that any medical bills incurred by Mazur in an accident involving the truck would be covered under Mazur's employee medical benefits insurance. Mazur followed Kevin's advice and purchased the recommended coverage which did not include any reimbursements for medical bills by way of PIP benefits or medical payments coverage (Med Pay).
While driving his Subaru pickup truck in November 1984, Mazur was involved in an automobile accident in which he sustained serious injuries requiring extensive medical treatment. After the accident, Mazur spoke to Kevin, who told him that the medical bills from the accident should be covered under the policy on the truck. However, when Mazur submitted his medical bills to Selected, it denied payment because there was no such coverage.
At trial Mazur established the facts heretofore recited and also produced an insurance expert who opined that Curtis had breached his professional obligation to Mazur by "failing to provide the type of coverage that he had indicated to Mazur that he was obtaining, and secondly by giving improper, inadequate advice." He indicated further that a prudent insurance agent would have provided better advice than that provided by *223 Kevin and would have advised Mazur to obtain personal injury and medical coverage for his vehicle which ordinarily would provide reimbursement for at least $5,000.00 in medical bills.
At trial the parties stipulated that Mazur had legitimately incurred $14,955.20 in medical bills as a result of the accident. They also stipulated that Curtis was "an agent" of Selected at the time. Kenneth Curtis explained further that he was a licensed "broker/agent" and had been in the insurance business for thirty years. When Mazur purchased the insurance in question, Curtis was an insurance agent for several companies, including Selected "pursuant to a written agency agreement."[1]
Curtis explained that as "an agent" of Selected, he could bind Selected to coverage for such insurance as was within the scope of authority delegated to him by Selected, presumably outlined in the written agency agreement.
An underwriter for Selected described the process which was followed when Selected received an insurance application. It was conceded that Curtis was authorized to issue Med Pay coverage for $5,000 in connection with the type of policy issued to cover Mazur's pickup truck, but would have to submit for approval, any excess coverage for up to $10,000.
As noted, the jury found that Curtis was negligent in failing to advise Mazur of PIP or Med Pay benefits and that determination is not attacked here. Therefore the evidence in support of such a determination will not be repeated except insofar as it is relevant to the issue on appeal. In ruling on Curtis' crossclaim for indemnification the trial court issued a letter opinion in which it concluded that
the Curtis Agency is entitled to full indemnification from Selected Risks. I am aware from the jury's verdict that, factually, plaintiff would have requested $10,000 med pay coverage, and that it would have been requested. Mr. Fitzsimmons, commercial lines underwriter for Selected Risks, never put in issue that the insurer would have declined to provide that coverage to plaintiff. *224 Therefore, it is evident that the Curtis Agency's negligence did not proximately cause Selected Risks any loss. Therefore Selected Risks should fully indemnify the Curtis Agency.
It also determined that the judgment entered in favor of Mazur should be reduced by the amount of the premium which he would have paid for the Med Pay benefits, had it been provided.
This appeal involves only the dispute between Selected and Curtis concerning who ultimately should be responsible for the $10,000 in medical expenditures incurred by Mazur which were not reimbursed by the insurer because of Curtis' negligent advice to Mazur.
In addressing the problem of the liability between Curtis and Selected, generally speaking,
Unless otherwise agreed, the principal is not subject to a duty to indemnify an agent:
(a) for pecuniary loss or other harm, not of benefit to the principal, arising from the performance of unauthorized acts or resulting solely from the agent's negligence or other fault; [Restatement, Second, Agency, § 440 (1958)].
This principle has been followed in New Jersey. See Hagen v. Koerner, 64 N.J. Super. 580, 585 (1960) (citing Restatement, supra, § 440); Erlich v. First Nat'l. Bank of Princeton, 208 N.J. Super. 264, 307 (Law Div. 1984) (citing Hagen and Restatement, supra, § 440).
Mazur's cause of action against Curtis here was based on his insurance agent's malpractice similar to that involved in Rider v. Lynch, 42 N.J. 465, 482 (1964) (broker must use reasonable care and judgment in determining adequacy of policy for customer's needs). See generally Bates v. Gambino, 72 N.J. 219, 224-227 (1977) (discussing liability of insurance brokers for their negligent acts vis-a-vis their customers); Appleman, Insurance Law and Practice, § 8845 (1981) (discussing duty of brokers and agents to exercise reasonable expertise in advising customers); Annotation, "Liability of Insurance Agent or Broker on Ground of Inadequacy of Liability Insurance provided," 72 A.L.R.3d 704 (1976).
*225 Application of that general indemnification principle obviously would relieve Selected of any obligation to indemnify Curtis for his sole negligence. Cf. Hagen, supra, 64 N.J. Super. at 585. Such a result would be consistent with the principle that "a party who is at fault may not obtain indemnification for its own acts." Ramos v. Browning Ferris Ind. of South Jersey, Inc., 103 N.J. 177, 190 (1986).
A recent decision by this court, however, appears to require an insurer to indemnify a negligent agent in such circumstances unless the company proves that it would not have issued the coverage had the agent acted properly. In Regino v. Aetna Cas. & Surety Co., 200 N.J. Super. 94 (App.Div. 1985), plaintiff attempted to insure a front-end loader through his insurance broker agent. The broker orally bound coverage with Aetna, as he was authorized to do, and eventually obtained an insurance policy. When the loader was subsequently stolen, however, Aetna refused to pay the claim because the policy, as issued, did not provide coverage for that loader. It was established that this occurred when the broker telephoned Aetna and verbally bound the coverage, but failed to confirm the oral binder by a written request including the loader. Thus, this equipment was never added to plaintiff's policy. The jury returned a verdict against the broker, who then sought indemnification from Aetna. 200 N.J. Super. at 97-98. In that case we concluded that since Aetna "was bound as of the time the agent confirmed the insurance to plaintiff...." the agent was entitled to indemnification from Aetna. Specifically, we held that
because the insurer has failed to demonstrate that it would not have insured the loss had the agent acted properly, it cannot claim that the loss was "proximately caused by" the agent's negligence. Aetna did not attempt to establish it would not have insured the risk.... In these circumstances Adams' negligence was not the proximate cause of Aetna's liability. Even if Adams had not been negligent, the theft still would have occurred and Aetna would have covered it. [200 N.J. Super. at 99. (citations omitted)].
As in Regino, the Curtis-Selected relationship here is governed by a written agency agreement providing that Selected *226 will accept responsibility for Curtis as its agent when he acts as such. Thus, the agreement authorizes Curtis to execute contracts of insurance on behalf of Selected and therefore bind it to coverage. It is clear that such a broker-agent's status is a hybrid one. Johnson v. MacMillan, 233 N.J. Super. 56 (App. Div. 1989). The conclusion to be made then is that when such a broker or agent acts for the company, within the scope of the authority outlined by the terms of the agreement, he is acting as the insurance company's authorized agent and his acts are to be considered as the company's acts under the principle of respondeat superior.
This is precisely what happened in Regino, supra. There, the broker, with the authority to do so, telephoned Aetna and bound it to coverage verbally. However, he thereafter failed to confirm the correct coverage by writing to Aetna. The conceptual basis in Regino thus clearly rested upon the premise that once the binder was verbally communicated by a person authorized to do so, the company was committed and on notice of its obligation. The broker, in performing the binding function, was thus acting as Aetna's agent, rather than the agent of plaintiff, the broker's client.
By way of contrast, however, the function which was negligently performed by Curtis here was not one encompassed by the terms of the agency agreement with Selected nor did it ever receive notice of what was taking place. Rather, it was one involving the broker-client relationship established with Mazur and was the very same type of function to which the Rider court ascribed the duty of acting with "the degree of skill and knowledge requisite to his calling." 42 N.J. at 477. That is to say, when Curtis undertook to evaluate Mazur's insurance needs, make recommendations to him, and ensure acquisition of appropriate coverage, he was acting, not as the authorized agent for any one of the several insurers which he *227 represented, but only for Mazur. Thus, Curtis' actionable negligence was in failing to recommend to Mazur a particular available coverage. That act of negligence was not, by application of the principle of respondeat superior, an act of negligence which could be imputed to Selective. Johnson, supra, 233 N.J. Super. at 63.
This result also is mandated from a public policy point of view. There is a great potential for collusion in cases where a binder does not issue. An agent and an insured could conspire to claim that coverage did exist or that a greater level of coverage had been agreed upon (e.g. although an automobile policy was written for $15,000/30,000 coverage, the agent and insured might claim, after an accident, that this was a simple mistake, and they had actually intended to write a $100,000/300,000 coverage).
Moreover, a rule favoring such a blanket indemnification would effectively immunize an agent from damages despite his negligence. While "damages are generally intended to compensate rather than punish," Berg v. Reaction Motors Div., 37 N.J. 396, 412 (1962), it is also well established that "one reason for imposing liability is the deliberate purpose of providing" an incentive "to prevent the occurrence of the harm." Prosser & Keeton, Torts, § 4, at 25 (5th Ed. 1984). While we are cognizant of the fact that an agent's repeated negligence would certainly motivate an insurance company to terminate its relationship with that agent, the company could suffer considerable damages in the interim. Thus, as Selected aptly observes, requiring the negligent agent to pay the damages himself will provide an incentive for him to avoid such negligent behavior in the future.
In sum, we reverse the decision of the trial court awarding indemnification to Curtis on his crossclaim against Selected and enter a judgment of dismissal in favor of Selected.
NOTES
[1] The agency agreement referred to was never made a part of the record and its provisions are gleaned from undisputed evidence adduced at trial.